UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-1341 (JFB) (ETB)
_____

CLAUDIA DESILVA, ET AL.,

Plaintiffs,

VERSUS

NORTH SHORE-LONG ISLAND JEWISH HEALTH SYSTEM, INC., ET AL.,

Defendants.

_____

MEMORANDUM AND ORDER
March 7, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Claudia DeSilva, Gregg Lambdin, Kelly Iwasiuk, Eileen Bates-Bordies, Margaret Hall, and Brenda Gaines (collectively, "plaintiffs") commenced this action on March 24, 2010, on behalf of themselves and others similarly situated, against defendants North Shore-Long Island Jewish Health System, Inc., North Shore-Long Island Jewish Health Care, Inc., Peninsula Hospital Center[1], Forest Hills Hospital, Franklin Hospital, Glen Cove Hospital, Huntington Hospital Association, Long Island Jewish Medical Center, Long Island Jewish Hospital, Zucker Hillside Hospital, North Shore University Hospital, Plainview Hospital, Schneider Children's Hospital, Southside Hospital, Staten Island University Hospital, Syosset Hospital, Michael J. Dowling, Joseph Cabral, and North Shore-Long Island Jewish Health System 403B Plan (collectively, "defendants" or "LIJ"), alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), and New York Labor Law ("NYLL"). Plaintiffs also alleged a number of state common law claims, namely: breach of implied oral contract, breach of express oral contract, breach of implied covenant of good faith and fair dealing, *quantum meruit*, unjust enrichment, fraud and conversion. Plaintiffs are seeking, *inter alia*, unpaid wages and

_____

[1] By Stipulation and Order dated September 9, 2010, defendant Penninsula Hospital Center was dismissed from this action.

overtime, an order enjoining defendants from engaging in the pay violations that form the basis of plaintiffs' complaint, an award crediting plaintiffs for all hours worked, liquidated damages under the FLSA and NYLL, and an amount equal to the value that would make plaintiffs whole for defendants' alleged violations.

By Memorandum and Order dated March 16, 2011, this Court granted in part and denied in part defendants' motion to dismiss the Second Amended Complaint in this action. *DeSilva v. North-Shore-Long Island Jewish Health System, Inc.*, 770 F. Supp. 2d 497 (E.D.N.Y. 2011) ("*DeSilva I*"). In particular, the Court dismissed without prejudice plaintiffs' FLSA and NYLL claims—construed only as claims regarding overtime and not as claims regarding "straight time" or "gap time" pay—for failure to state a claim. The Court also dismissed plaintiff's RICO cause of action with prejudice to the extent that this claim was based upon defendants' failure to pay plaintiffs overtime, and thus was duplicative of plaintiffs' FLSA claim. However, to the extent that the RICO cause of action was based upon defendants' alleged failure to pay plaintiffs for "straight time" wages, the Court held that this claim was preempted by the FLSA. Nevertheless, the remaining RICO cause of action was dismissed without prejudice for failure to state a claim. As to plaintiffs' state common law claims, the Court dismissed these claims with prejudice as preempted by the FLSA to the extent that they sought overtime wages and, thus, were duplicative of the FLSA claim. The Court construed the surviving common law claims as seeking only unpaid "straight time" pay. However, plaintiffs' breach of implied oral contract, breach of express oral contract, breach of implied covenant of good faith and fair dealing, *quantum meruit*, fraud, and negligent misrepresentation claims were dismissed without prejudice for failure to state a claim. Plaintiffs' estoppel claim was dismissed because, as pled by plaintiffs, "estoppel" is not a distinct cause of action but instead is an equitable bar to defendants' assertion of a statute of limitations defense. Regarding plaintiffs' ERISA claims, plaintiffs' claim of failure to keep accurate records was dismissed without prejudice for failure to plead exhaustion of administrative remedies. As to the breach of fiduciary duty claim, the Court denied defendants' motion to dismiss this claim, but held that defendants could renew this motion after the parties conducted limited discovery on the issue of how benefits are determined under the controlling ERISA plans. Defendants' motion to dismiss on the grounds of preemption under the Labor Management Relations Act ("LMRA") was also denied at this juncture without prejudice.

On April 11, 2011, plaintiffs filed a Third Amended Complaint. Currently before the Court is defendants' motion to dismiss the Third Amended Complaint. In particular, defendants argue that: (1) plaintiffs have failed to correct the pleading defects identified by the Court with respect to the civil RICO claim, the ERISA recordkeeping claim, and the state common-law claims; (2) plaintiffs' newly-added civil RICO claim based upon the predicate act of forced labor must be dismissed for failure to state a claim; (3) plaintiffs' breach of fiduciary duty claim under ERISA must be dismissed because the controlling plan documents demonstrate that plaintiffs cannot state such a claim; and (4) the claims of those plaintiffs who are union members are preempted by the LMRA. In addition, on May 13, 2011, plaintiffs renewed their motion for expedited notice under the FLSA to affected employees.

For the reasons set forth herein, the Court agrees with defendants that plaintiffs'

2

have failed to correct the pleading defects identified in *DeSilva I* with respect to their civil RICO, ERISA recordkeeping, and state common-law claims. Accordingly, having already given plaintiffs an opportunity to amend their complaint to correct these defects, the Court dismisses these claims with prejudice. In addition, the Court dismisses with prejudice plaintiff's ERISA breach of fiduciary claim, because the Court agrees with defendants that the controlling plan documents indicate that plaintiffs cannot state such a claim. However, as to defendants' contention that the LMRA preempts all of plaintiffs' claims, the Court finds that, based on the current record at the motion to dismiss stage, it cannot conclude as a matter of law that LMRA preemption applies here. Thus, defendants' motion to dismiss on this ground is denied without prejudice to renewal at the summary judgment stage. Finally, as to plaintiffs' newly-asserted RICO claims based upon the predicate act of forced labor, this claim is also dismissed with prejudice.[2]

I. BACKGROUND

A. Facts[3]

Named plaintiffs work or have worked for defendants in various nursing positions and in various locations.[4] (Third Amended Complaint ("TAC") ¶¶ 69-93.) According to plaintiffs, each of the hospitals and locations for which plaintiffs worked is part of the North Shore-Long Island Jewish Health System ("LIJ"), which is a consortium that operates over seventy health care facilities and centers. (*Id.* ¶¶ 15-16, 22-23.) Plaintiffs purport to represent a class of over 38,000 current and former employees of the defendant hospitals and LIJ system "whose pension and 401(k) or 403(b) plans were not credited with their non-reduced weekly wages and correct overtime compensation" and "who were injured by defendants' scheme to cheat employees out of their property and to convert the employees' property, including their wages and/or overtime pay. . . ." (*Id.* ¶¶ 7, 9.)

Specifically, plaintiffs contend that LIJ maintained three illegal pay policies – the meal and break deduction policy, the unpaid pre-and post-schedule work policy, and the unpaid training policy – that denied plaintiffs and class members compensation for all hours worked, including overtime hours and hours that would have been compensated at applicable premium pay rates. (*Id.* ¶¶ 98, 136, 204.) As to the meal and break deduction policy, plaintiffs note that defendants' timekeeping system automatically deducts time from employees' paychecks for meals and breaks. (*Id.* ¶ 100.) However, plaintiffs allege that they do, in fact, work during their meals and breaks and are not paid for that work. (*Id.* ¶ 103; *see*

---

[2] The Court notes that defendants have not challenged plaintiffs' re-pled FLSA and NYLL claims based upon defendants' alleged failure to pay overtime wages.

[3] The following facts are taken from the Third Amended Complaint and are not findings of fact by the Court. Instead, the Court will assume the facts in the Third Amended Complaint to be true and, for purposes of the pending 12(b)(6) motion to dismiss, will construe them in a light most favorable to plaintiffs, as the non-moving party.

[4] Plaintiff Claudia DeSilva has worked as a field nurse at Franklin Hospital since February 2006. (TAC ¶ 70.) Plaintiff Gregg Lambdin worked as a registered nurse and nurse clinician at North Shore University Hospital from 1995 until 2007. (*Id.* ¶ 73.) Plaintiff Kelly Iwasiuk worked as a registered nurse at "defendants' Huntington location" from May 2003 until November 2007. (*Id.* ¶ 76.) Plaintiff Eileen Bates-Bordies worked as a registered nurse at Southside Hospital from May 2001 until August 2006. (*Id.* ¶ 79.) Plaintiff Margaret Hall worked as a staff registered nurse and field nurse at North Shore University Hospital and North Shore Home Care division from July 1991 until April 2009. (*Id.* ¶ 82.) Plaintiff Brenda Gaines worked as a staff nurse and a home care staff nurse for Long Island Jewish Hospital from July 1990 until June 2009. (*Id.* ¶ 88.)

*also id.* ¶ 105 ("[D]efendants are aware of such work being performed is because the defendants know they permit, and often request, that such work be done by the employees during their unpaid meal breaks").) Plaintiffs further allege that defendants know, or should have known, that plaintiffs work through their breaks, because, *inter alia*, such work has been performed in plain sight of defendants' management and also at management's request. (*Id.* ¶¶ 105-06, 111.) When asked by employees about the meal and break deduction policy, "defendants affirmatively stated that the employees were being fully paid for the work time for which they were entitled to be paid, even though defendants knew compensable work time was being excluded from the employees' pay." (*Id.* ¶ 107.) Plaintiffs claim that these representations by defendants were part of a course of conduct to defraud plaintiffs "from the pay they were owed, and to mislead them into believing they had been fully paid as required by law." (*Id.*) Plaintiffs state that they are entitled to compensation for all time spent working for defendants, including during plaintiffs' breaks, and that "[t]his additional uncompensated time should have been paid at overtime rates when Plaintiffs and Class members' scheduled shifts exceeded 40 hours in a week, or when the uncompensated time from missed or interrupted meal breaks, pre- and post-schedule work, and training time, pushed their hours for the week over 40." (*Id.* ¶¶ 113, 93-94.)

Furthermore, plaintiffs allege that, pursuant to defendants' "unpaid pre- and post-schedule work policy," plaintiffs are required to perform work before and after their scheduled shifts, but are not fully and properly compensated for such work. (*Id.* ¶¶ 117-24.) Likewise, plaintiffs claim that, under defendants' "unpaid training policy," plaintiffs are required to attend compensable training programs, but are not paid for all time spent attending such programs. (*Id.* ¶¶ 127-32.) As a result of these "unpaid work policies," defendants required plaintiffs and class members to "[w]ork hours both under and in excess of forty hours per week and were not paid for all of those hours." (*Id.* ¶¶ 204-05.) Plaintiffs also contend that, through wage payments and payroll information provided to employees, defendants deliberately concealed from plaintiffs and other employees that they were not being fully compensated for all hours worked and "misled them into believing they were being paid properly." (*Id.* ¶ 140.)

B. Procedural History

Plaintiffs filed their original complaint in this action on March 24, 2010. After the Court granted in part and denied in part defendants' motion to dismiss plaintiffs' Second Amended Complaint,[5] plaintiffs filed a Third Amended Complaint on April 11, 2011. On May 13, 2011, defendants filed their motion to dismiss, and plaintiffs filed their motion for expedited notice to affected employees pursuant to Section 216(b) of the FLSA. On June 13, 2011, plaintiffs filed their opposition to defendants' motion to dismiss, and defendants filed their opposition to plaintiffs' motion for expedited notice. The

---

[5] Defendants originally had moved to dismiss plaintiffs' Amended Complaint. However, during oral argument on that motion, the Court informed plaintiffs that their Amended Complaint was clearly deficient as to their FLSA claim, insofar as it did not provide sufficient information regarding the named plaintiffs. Accordingly, the Court granted plaintiffs leave to file a Second Amended Complaint to remedy this deficiency, and directed that the complaint as amended should set forth the facilities at which the named plaintiffs worked, the positions they held, and the approximate dates of their employment. Plaintiffs subsequently filed their Second Amended Complaint on December 8, 2010.

4

parties submitted their replies in support of their respective motions on July 8, 2011. The Court heard oral argument on the parties' motions on July 26, 2011. The parties thereafter submitted several letters to the Court regarding class definitions and regarding supplemental authority for the Court's consideration.

The motions are fully submitted, and the Court has considered all of the parties' arguments.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citations omitted)).

The Court notes that, in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v.*

5

*City of N.Y.*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

II. DISCUSSION

A.  RICO

In their civil RICO claim that was dismissed by the Court in *DeSilva I*, plaintiffs had alleged, *inter alia*, that defendants engaged in a scheme to defraud plaintiffs by concealing that defendants were willfully and systematically withholding from plaintiffs their regular or statutorily required rate of pay for all hours worked. (Second Amended Complaint ("SAC") ¶ 120.)[6]  In furtherance of this scheme, defendants allegedly mailed payroll checks to plaintiffs that were "false and deceptive because they misled Plaintiffs and Class Members about the amount of wages to which they were entitled, the number of hours which they had worked, and whether defendants had included all compensable time, as well as their status and rights under the FLSA." (*Id.* ¶ 123.)  Plaintiffs alleged that the mailing of these misleading payroll checks constituted individual acts of mail fraud, which served as the predicate acts underlying plaintiffs' RICO claim. (*Id.* ¶ 126.)

Here, in contrast, plaintiffs have abandoned their mail fraud claims and, instead, have alleged that defendants violated RICO by engaging in a pattern of racketeering activity through the predicate acts of wire fraud and forced labor.  In particular, plaintiffs allege in the TAC that defendants "devised, intended to devise, and carried out a scheme to obtain free labor and services performed by Plaintiffs and Class Members, by threatening serious harm, while at the same time cheating Plaintiffs and Class Members out of their property and converting Plaintiffs' and Class Members' property, including their wages and/or overtime pay." (TAC ¶ 157.)  Further, plaintiffs claim that defendants' scheme "consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiffs and Class Members their regular or statutorily required rate of pay for all hours worked in violation of the law . . . and of concealing from Plaintiffs and Class Members the fact that they were being deprived of their wages." (*Id.*)

As to the wire fraud allegations, defendants contend that plaintiffs' claims must fail for the same reasons that their mail fraud claims failed.  For the reasons set forth below, the Court finds that, as with their mail fraud allegations, plaintiffs have failed to state a claim for wire fraud because they have failed to allege how the purportedly fraudulent wire payments furthered defendants' scheme.  Because this is the exact same defect already identified by the

---

[6] The Court notes that, in their Second Amended Complaint ("SAC"), plaintiffs attempted to allege RICO violations under 18 U.S.C. § 1962(a) (which prohibits using income received from a pattern of racketeering activity to acquire an interest in or to establish an enterprise engaged in interstate commerce), § 1962(c) (which prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity), and § 1962(d) (which proscribes conspiring to violate the prior subsections).  *See DeSilva I*, 770 F. Supp. 2d at 520 n.9.  In addition, in the SAC, plaintiffs claimed to have suffered two injuries:  first, interference with their right to recover due to defendants' concealment of their fraud, and, second, reduction in wages because the fraudulent mailings allowed defendants to continue their fraudulent scheme.  *Id.* at 520-21.  In their Third Amended Complaint, however, plaintiffs have abandoned their § 1962(a) and § 1962(d) claims, as well as their claim that they were injured through interference with their right to recover.  Accordingly, the Court here will only discuss its prior decision as it pertains to plaintiffs' § 1962(c) and reduction in wages claims, which are both relevant to the current motion.

6

Court in connection with the mail fraud claims in *DeSilva I*, 770 F. Supp. 2d at 527, and because the Court has already provided plaintiffs with an opportunity to replead their claims to correct this defect but they have failed to do so, the Court dismisses with prejudice plaintiffs' civil RICO claim based upon wire fraud. Likewise, as to plaintiffs' forced labor allegations, the Court finds that the "threats of serious harm" alleged by plaintiffs do not state a claim under the forced labor statute and, as such, this claim is also dismissed with prejudice, for the reasons discussed herein.

The Court will address the predicate acts of wire fraud and forced labor in turn.

### 1. Wire Fraud Allegations

As an initial matter, the Court notes that the elements of a mail fraud and wire fraud claim parallel each other and, consequently, the Court's analysis in *DeSilva I* with respect to plaintiffs' mail fraud allegations is equally applicable here to plaintiffs' wire fraud claims. *See United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) ("The 'essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme.'" (quoting *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004)).

In *DeSilva I*, the Court held that plaintiffs had failed to allege how the purportedly fraudulent paychecks mailed by defendants furthered defendants' scheme. 770 F. Supp. 2d at 527. In so holding, the Court cited *Cavallaro v. UMass Memorial Health Care Inc.*, No. 09-CV-40152 (FDS), 2010 WL 3609535 (D. Mass. July 2, 2010), in which the court had dismissed a RICO claim that was nearly identical to the claim brought here:

Plaintiffs have failed to show how defendants furthered their allegedly fraudulent scheme by mailing the paychecks in question. According to plaintiffs, the mailed paychecks fraudulently omitted time that they had actually worked, and thus concealed from them the fact that they were not being fully compensated. But if the paychecks were as plaintiffs allege, they did not further defendants' fraudulent scheme; to the contrary, they made the scheme's discovery more likely. . . . Under plaintiffs' version of events, the paychecks did not accurately reflect the number of hours worked, although they did accurately reflect the number of hours for which plaintiffs were paid. . . . [H]ere, the plaintiffs . . . know better: they know how many hours they have worked and how much money they have been paid. Merely by looking at the face of their paychecks, the plaintiffs can ascertain whether they are being underpaid. And because those paychecks put them on notice of the alleged fraudulent scheme, plaintiffs have failed to state a cause of action under § 1961(c).

*Id.* at *3-5. Furthermore, this Court noted that "[r]elying upon *Cavallaro*, several district courts in the Second Circuit have dismissed complaints that were virtually identical to the complaint in this case." *DeSilva I*, 770 F. Supp. 2d at 527 (citing *Sampson v. Medisys Health Network Inc.*, No. 10-CV-1342 (SJF) (ARL), 2011 WL 579155, at *6 (E.D.N.Y. Feb. 8, 2011) ("[I]f plaintiffs were repeatedly not paid for time worked in violation of the contract, as plaintiffs allege, the conclusory allegation that the payroll checks constituted a fraudulent scheme to conceal that fact will

7

not support the RICO claim. If plaintiffs are aware of their hours worked, the payroll checks would put plaintiffs on notice of any fraudulent scheme, not conceal it."); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, Nos. 10-CV-2661 (PAC), 10-CV-2662 (PAC), 10-CV-2683 (PAC), 10-CV-3247 (PAC), 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011) ("[A]s the [*Cavallaro* court] observed in dismissing a nearly identical complaint, the mailing of the paychecks, if they did anything 'serve[d] to expose, not further, the alleged fraud.'"); *Wolman v. Catholic Health Sys. of Long Island, Inc.*, No. 10-CV-1326 (JS)(ETB), 2010 WL 5491182, at *5-6 (E.D.N.Y. Dec. 30, 2010) (same)). The Court agreed with the reasoning of the above-cited decisions and, as such, found that plaintiffs had failed to state a claim for mail fraud.

Here, plaintiffs' wire fraud allegations suffer from the same fatal defect as their mail fraud allegations. Specifically, plaintiffs claim that the wire payments made by defendants purportedly "misrepresented to Plaintiffs and Class Members that they were being properly compensated for all time worked" because "the fraudulent wage payments wired to Plaintiffs and Class Members actually represented an amount less than the full amount of wages owed to Plaintiffs and Class Members for all compensable work performed." (TAC ¶¶ 161-62.) Consequently, plaintiffs "relied to their detriment on the misleading wage payments that defendants wired to Plaintiffs' and Class Members' bank accounts, and those misleading transmissions were a proximate cause of Plaintiffs' and Class Members' injuries." (*Id.* ¶ 164.) However, as with the allegedly fraudulent paychecks, plaintiffs have failed to plead how the wire payments were made in furtherance of defendants' scheme. Again, plaintiffs were aware of the number of hours they worked and, accordingly, the wire payments–which purportedly paid plaintiffs less than the full amount of wages owed to them–would not have *furthered* defendants' scheme, but instead would have put plaintiffs' on *notice* of that scheme, by revealing that defendants were not compensating plaintiffs for all hours worked. Thus, the Court finds that plaintiffs have failed to state a claim for wire fraud. Additionally, because the Court already identified this exact pleading defect in *DeSilva I* and gave plaintiffs an opportunity to replead to correct the defect, and because plaintiffs clearly have failed to do so, the Court dismissed with prejudice plaintiffs' civil RICO claim to the extent that it is premised upon the predicate acts of wire fraud.[7]

2. Forced Labor Allegations

In addition to their wire fraud allegations, plaintiffs claim:

> Defendants' Scheme also involved the forced labor of Plaintiffs and Class Member[s] to perform labor and services by threatening serious harm to Plaintiffs and Class Members. Specifically, defendants threatened serious financial harm to Plaintiffs and Class Members in the event Plaintiffs and Class Members failed to perform the requested labor and services for which defendants were not paying the Plaintiffs and Class Members.

(TAC ¶ 168.) In particular, plaintiffs allege that defendants represented that plaintiffs' "employment would be in jeopardy if Plaintiffs and Class Members failed to

---

[7] Because the Court finds that plaintiffs have failed to plead that the purported acts of wire fraud furthered defendants' scheme, the Court need not reach defendants' remaining arguments as to why plaintiffs' wire-fraud based civil RICO claim must fail.

8

complete all assigned tasks." (*Id.* ¶ 169.) Plaintiffs claim that they performed labor and services during their meal breaks, before and after scheduled shifts, and during training "out of fear of losing their jobs, and thus, the fear of suffering serious financial harm." (*Id.* ¶ 170.) Plaintiffs also claimed that they "feared reputational harm . . . for failure to perform their required labor and services." For example, plaintiffs allege that "defendants would openly question and criticize Plaintiffs and Class Members for being unable to complete their required assignments within the timeframe of their scheduled shifts," which could have a "detrimental effect" on plaintiffs' "employee evaluations, future wage increases, and the ability to obtain employment elsewhere." (*Id.* ¶ 171.)

Under the forced labor statute, 18 U.S.C. § 1589:

> Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be criminally liable. 18 U.S.C. § 1589(a). Plaintiffs here claim that defendants have obtained labor and service from plaintiffs by means of threats of serious harm. However, for the reasons set forth *infra*, the Court finds that plaintiffs have not pled a viable RICO claim based upon the alleged predicate acts of forced labor.

First, to the extent that plaintiffs' forced labor claims are premised upon defendants forcing plaintiffs to work overtime without pay, these claims are clearly subsumed within plaintiffs' FLSA claim and, therefore, are preempted for the reasons discussed at length in *DeSilva I*, 770 F. Supp. 2d at 512-19. Moreover, plaintiffs' conclusory allegations that they provided labor and services to defendants because defendants either threatened to fire plaintiffs or berated plaintiffs in public for not finishing their work, the Court finds that such allegations do not state a claim under the forced labor statute. Specifically, even accepting these allegations as true, these threats would merely be threats of adverse but legitimate consequences, and such threats do not constitute forced labor. *See United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 ("We do agree that the phrase 'serious harm,' as extended to non-physical coercion, creates a potential for jury misunderstanding as to the nature of the pressure that is proscribed. Taken literally, Congress' 'threats' and 'scheme' language could be read to encompass conduct such as the employer's 'threat' not to pay for passage home if an employee left early. Depending upon the contract, surely such a 'threat' could be a legitimate stance for the employer and not criminal conduct. Thus, in an appropriate case we think that the court

in instructing the jury would be required to draw a line between improper threats or coercion and permissible warnings of adverse but legitimate consequences."); *cf. Pasamba v. HCCA International, Inc.*, No. 08-CV-247 (PHX)(NVW), 2008 WL 2562928, at *6 (D. Ariz. June 24, 2008) (where employer warned nurse whom employer had recruited from abroad that "she would be 'in danger of being deported' if her employment terminated" and allegedly coerced plaintiff into signing a promissory note based on "the threat of having her visa process terminated to her detriment if she wanted to obtain a subsequent United States visa and the threat of owing $10,000 on the first promissory note," plaintiff had not alleged sufficient facts to establish that defendant had committed RICO predicate act of forced labor because "warning of adverse but legitimate consequences to terminating her employment prematurely would not constitute abuse of process" under § 1589).[8] Notably, plaintiffs have not cited a single case to support their novel theory that threatening to fire an at-will employee or berating an employee in public constitutes forced labor. Thus, plaintiffs' RICO claim based upon the predicate acts of forced labor must be dismissed. In dismissing this claim, the Court has considered whether to dismiss with or without prejudice. However, given that plaintiffs have already been given ample opportunity to allege a RICO claim and have failed to do so, the Court declines to grant plaintiffs yet another opportunity to re-plead. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim") (citing *Armstrong v. McAlpin*, 699 F.2d 79, 93–94 (2d Cir. 1983) ("Because the complaint whose allegations were being considered by the district court was plaintiffs' second amended complaint, the district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead.")). Accordingly, plaintiffs' civil RICO claim is dismissed in its entirety with prejudice.

B. State Common-Law Claims[9]

In the Third Amended Complaint, plaintiffs have alleged seven common law causes of action for breach of implied oral contract, breach of express oral contract, breach of implied covenant of good faith and fair dealing, *quantum meruit*, unjust enrichment/restitution, fraud, and conversion. For the reasons set forth below, the Court finds that plaintiffs have failed to

---

[8] Again, to the extent plaintiffs claim that defendants' threats were illegitimate because they forced plaintiffs to work overtime without the pay that they were entitled to under the FLSA, such a claim is duplicative of plaintiffs' FLSA claim and is preempted.

[9] Defendants argue that plaintiffs have still based their common-law claims on defendants' alleged failure to pay statutory overtime and that, accordingly, plaintiffs' state-law claims are still preempted under the FLSA as discussed in *DeSilva I*. The Court disagrees. Having reviewed the Third Amended Complaint, plaintiffs' state-law claims are premised on defendants' failure to pay plaintiffs for all hours worked including at "applicable premium pay" rates. Although the Court noted in *DeSilva I* that it was not entirely clear whether these "applicable premium pay" claims were subsumed within the non-preempted "straight time" claims or arose separately from those claims, the Court nonetheless held that "to the extent that these premium pay rates were set by plaintiffs' alleged employment contracts and not by the minimum overtime pay standards set forth in the FLSA, the premium pay claims also are not be duplicative of their FLSA claims and, thus, are not preempted." 770 F. Supp. 2d at 533 n.18. That reasoning still applies here. Accordingly, construing the allegations in plaintiffs' favor for purposes of defendants' motion to dismiss, the Court finds that plaintiffs common law claims are based upon the pay rates set in the alleged employment contracts, and not by the FLSA, and that such claims accordingly are not preempted.

correct the pleading defects identified by the Court in *DeSilva I*, and, accordingly, plaintiffs' common law claims are dismissed with prejudice.[10]

First, as to plaintiffs' fraud claim, the Court agrees with defendants that plaintiffs have failed to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). As acknowledged by plaintiffs, Rule 9(b) requires all averments of fraud and the circumstances constituting fraud to be stated with particularity. The reasons discussed *supra*, for the dismissal of plaintiffs' RICO claims apply with equal force to plaintiff's fraud claim. *See Nakahata*, 2011 WL 321186, at *6. Accordingly, plaintiffs' fraud claim is dismissed with prejudice.

Second, plaintiffs fail to plead either a breach of express contract or a breach of implied contract because they still do not "allege the essential terms of the parties' purported contract in nonclonclusory language, including the specific provisions of the contract upon which liability is predicated." *Sirohi v. Trustees of Columbia Univ.*, No. 97-CV-7912, 1998 WL 642463, at *2 (2d Cir. Apr. 16. 1998) (quoting *Sud v, Sud*, 621 N.Y.S.2d 37, 38 (App. Div. 1995)); *see also Nakahata* 2011 WL 321186, at *6. The Third Amended Complaint alleges that "[d]efendants contracted to hire Plaintiffs and Class Members at a set rate of pay, with a minimum work schedule for a particular position, and under set terms of employment." (TAC at ¶¶ 202, 210.) The Third Amended Complaint further alleges that

[t]he terms of this express oral contract included defendants' explicit promise to compensate Plaintiffs and Class members for 'all hours worked,' in return for the labor and services provided by Plaintiffs and Class members. The labor and services provided by Plaintiffs and Class members included tasks, as described in detail above, performed by Plaintiffs and Class members pursuant to defendants' Unpaid Work policies.

(TAC ¶ 203.) Plaintiffs allege that this language satisfies their burden to plead the specific provisions of the contract upon which liability is predicated. However, again, plaintiffs' allegations are merely general and conclusory. Accordingly, because plaintiffs' TAC fails to adequately plead breach of implied and express oral contract, those claims are dismissed with prejudice. Moreover, given that plaintiffs' contractual claims have been insufficiently pled in the Third Amended Complaint, the Court finds that plaintiffs' breach of implied covenant of good faith and fair dealing claim, which is based upon the same conduct giving rise to the contract claims, also cannot survive.[11] *See Blessing v. Sirius*

---

[10] As already discussed at length in *DeSilva I*, to the extent plaintiffs premise their state common law claims on alleged failures to provide statutorily required compensation for overtime hours, those claims must be dismissed as preempted by the FLSA. 770 F. Supp. 2d at 530-33.

[11] Plaintiffs argue that their claim is based on "something other than defendants' alleged breach of the employment contracts." (Pls.' Opp. Memo at n.13.) Plaintiffs point to their allegations in the Third Amended Complaint that "[p]laintiffs and Class Members feared reputational harm, both internally and externally, for failure to perform their required labor and services. Specifically defendants would openly question and criticize Plaintiffs and Class Members for being unable to complete their required assignments . . . ." and that "[t]his fear of reputational harm compelled Plaintiffs and Class members to perform the labor and services required by defendants outside the confines of their scheduled shifts. (TAC ¶¶ 171, 172; Pls.' Opp. Memo at n.13.) However, the Court finds that despite these allegations, it is clear that plaintiffs' breach of implied covenant of good

*XM Radio Inc.*, 756 F. Supp. 2d 445, 460 (S.D.N.Y. 2010) ("Under New York law, a cause of action for breach of the implied covenant of good faith and fair dealing should be dismissed where it is 'duplicative of the insufficient breach of contract claim.'") (quoting *Jacobs Private Equity, LLC v. 450 Park LLC*, 22 A.D.3d 347, 803 N.Y.S.2d 14, 15 (2005) and citing *Triton Partners LLC v. Prudential Secs., Inc.*, 301 A.D.2d 411, 752 N.Y.S.2d 870, 870 (2003)).

Third, plaintiffs' quantum meriut claim[12] must also be dismissed because plaintiffs have failed to correct the defects present in the Second Amended Complaint or in their Third Amended Complaint. Plaintiffs have set forth no more than vague and conclusory allegations regarding what services they provided to defendants or what the reasonable value for these services was. *See Singerman v. Reyes*, 240 A.D.2d 335, 659 N.Y.S.2d 762, 763 (1997). Plaintiffs merely allege that "[t]he reasonable value for the benefit conferred upon defendants by Plaintiffs and Class members was at least the applicable hourly rate for the time worked, including premium pay." (TAC ¶ 221.) However, plaintiffs have failed to plead how the "reasonable value for the benefit conferred" can be calculated. Plaintiffs also fail to plead where the applicable hourly rate can be found or how it can be calculated. Accordingly, plaintiffs' claim for quantum meriut must also be dismissed with prejudice in its entirety.

Finally, plaintiffs' claim for conversion must also fail.[13] "To state a cause of action for conversion of money, the money must be described or identified in the same as a specific chattel. In other words, the money must be specifically identified and segregated." *Global View Ltd. Venture Capital v. Great Central Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 480 (S.D.N.Y 2003) (internal quotation marks and citations omitted). Here, plaintiffs have failed to specifically identify the tangible funds that were converted, but instead seek to enforce an obligation to pay money owed in the form of wages owed. *See Ehrlich v. Howe*, 838 F. Supp. 482, 492 (S.D.N.Y 1994) ("[a]n action for conversion does not lie to enforce a mere obligation to pay money"). Accordingly, plaintiffs' complaint must be dismissed.

Thus, for the reasons set forth *supra*, plaintiffs' state law claims must be dismissed with prejudice in their entirety.

---

faith and fair dealing claim is based on the same conduct and facts as plaintiffs' breach of contract claims.

[12] In *DeSilva I* the Court did not dismiss plaintiffs' unjust enrichment claim because defendants did not make any arguments regarding why this claim should be dismissed. *DeSilva I*, 770 F. Supp. 2d at 534. Defendants now argue that quantum meriut and unjust enrichment/restitution claims "[a]re not separate causes of action under New York law, but are instead conceptualized as different facets of a single quasi contract cause of action and should be treated as such." (Defs.' Memo at 13 (citing *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)*; David R. Maltz & Co.*, No. 07-CV-1049 (WDW), 2010 WL 1286308, at *10 (E.D.N.Y. March 31, 2010); *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991) *rev'd on other grounds* 959 F.2d 425 (2d Cir. 1992); *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653, 656 (1987).) This Court agrees and finds that for the same reasons that plaintiffs' quantum meriut claim will be dismissed, plaintiffs' unjust enrichment/restitution claim must also be dismissed.

[13] The Court notes that in *DeSilva I* the Court did not dismiss plaintiffs' conversion claim because the only argument put forth by the defendants was that it was duplicative of the contract claims. *DeSilva I*, 770 F. Supp. 2d at 534. However, defendants now argue that the conversion claim should be dismissed on alternative grounds. This Court agrees.

## C. ERISA Claims

In plaintiffs' Third Amended Complaint, plaintiffs again bring a cause of action under ERISA alleging that the defendants breached their fiduciary duties under ERISA.[14] For the reasons set forth below, plaintiffs' claim under ERISA is dismissed with prejudice.

In *DeSilva I*, the Court ruled that "*if* the controlling plan documents reveal that benefits are tied to compensation actually paid – rather than to hours worked or compensation earned through hours worked – then plaintiffs have failed to state an ERISA cause of action." *DeSilva I*, 770 F. Supp. 2d at 545 (emphasis in the original). Each of the plan documents annexed to defendants' motion to dismiss defines benefits in terms of "compensation" and defines compensation in terms of wages actually paid.[15] (Chen Dec. Ex. A – Ex. C.) Accordingly, plaintiffs' breach of fiduciary duty claim under ERISA is dismissed with prejudice.[16]

## D. LMRA Preemption

Defendants also move to dismiss plaintiffs' Third Amended Complaint on the ground that plaintiffs' claims are preempted by the LMRA. As in defendants' motion to dismiss the Second Amended Complaint, defendants argue that because plaintiffs' claims will require the interpretation of a collective bargaining agreement ("CBA"), these claims are preempted by Section 301 of the LMRA, which, according to defendants, "preempts the field with respect to claims 'substantially dependent on analysis of a collective-bargaining agreement.'" (Defs.' Memo. at 18 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)).)

In *DeSilva I*, the Court denied defendants' motion to dismiss without prejudice on this ground. *DeSilva I*, 770 F. Supp. 2d at 546. The Court stated

> Even assuming *arguendo* that defendants are correct that plaintiffs' claims will require

---

[14] Plaintiffs do not appear to be bringing a claim for failure to keep accurate time of "all time worked" under Section 209 of ERISA. However, defendants point to plaintiffs' allegation in paragraph 152 of the Third Amended Complaint and argue that plaintiffs' record keeping claim under ERISA must be dismissed for failure to plead exhaustion of administrative remedies. (Defs.' Memo at 15.) Although the Court does not believe plaintiffs were intending to plead a record keeping claim under ERISA, to the extent that one was pled, it is dismissed with prejudice.

[15] The Court can consider the plan documents on a motion to dismiss because they are incorporated by reference in the Third Amended Complaint and, in any event, are integral to the claim.

[16] Although plaintiffs do not dispute that each applicable plan defines benefits in terms of compensation, plaintiffs attempt to argue that they have stated a valid ERISA claim with respect to those plans that "define 'compensation' broadly and do not limit wages to only those reported on a W-2," and with respect to those plans that establish a benefit

vesting threshold tied to "hours of service." (Pls.' Opp. Memo at 22.) After reviewing the plan documents, the Court finds the plaintiffs' argument to be without merit. First, hours of service is not relevant to the question of whether ERISA benefits under the plans are tied to wages paid. *See Mathews v. ALC Partner, Inc.*, No. 08-CV-010636, 2009 WL 3837249, at *6-7 (E.D. Mich. Nov. 16, 2009); *Henderson v. UPMC*, No. 09-CV-187J, 2010 WL 235117, at *2-3 (W.D. Pa. Jan 11, 2010) *aff'd* 640 F.2d 524 (3d Cir. 2011). Moreover, the three plans identified by plaintiffs as allegedly tying benefits to wages earned instead of wages paid (The Saving Plan for Employees of Southside Hospital, The Saving Plan for Registered Nurses of South Side Hospital and the North Shore-Long Island Cash Balance Plan) clearly define benefits in terms of compensation and define compensation in terms of wages actually paid. Accordingly, plaintiffs' claims are without merit.

interpretation of a CBA and thus are preempted, and even if "many" LIJ employees are unionized, it is not clear which of the named plaintiffs or class members are unionized, if any. Accordingly, it is not possible to determine based upon the pleadings which of the named plaintiffs and class members might have claims that require interpretation of a CBA, and the Court, therefore, must deny defendants' motion to dismiss at this juncture, without prejudice.

*Id.* Plaintiffs were also ordered to "to file an amended complaint that includes specific factual allegations that state which, if any, of the named plaintiffs are unionized and, accordingly, which of the named plaintiffs are subject to the terms of a CBA." *Id.* Accordingly, in the Third Amended Complaint, plaintiffs indicate that named plaintiff Kelly Iwasiuk was a member of the Huntington Hospital Nurses' Association and was subject to their CBA and that Eileen Bates-Bordies is a member of the NYSNA and subject to their CBA. (TAC ¶¶ 78, 81.)

Defendants argue that the two CBAs will need to be consulted by the Court to determine whether or not the defendants had actual or constructive knowledge of the alleged unscheduled work that they failed to report and were ultimately not compensated for. (Defs.' Memo at 18, 21). Plaintiffs contend that the Court does not need to interpret a CBA provision to make a determination as to whether there was notice because, for example, supervisors at a particular hospital observe the fact that people are working during their meal break, (Pls.' Opp. Memo at 28.) At oral argument on July 26, 2011, plaintiff also argued that at this stage of the litigation it is too early to tell whether or not the CBA requires preemption. (TR[17] 15:9-14). This Court agrees with plaintiffs that, at this stage, it is premature to determine whether or not the plaintiffs' claims are preempted by the CBAs because the Court is unable to determine in this particular case, at the motion to dismiss stage, whether the CBAs will need to be interpreted to resolve the claims in this case.

"The Second Circuit has noted that the boundary between claims requiring 'interpretation' of a CBA and those that require the CBA be 'consulted' is an elusive one." *Gordon v. Keleida Health*, No. 08-CV-378S, 2009 WL 4042929, at *3 (W.D.N.Y. Nov. 19, 2009) (citing *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001)); *see also Pruell v. Caritas Christi*, 645 F.3d 81, 85 n.4 (1st Cir. 2011) (noting uncertainties in the law regarding, *inter alia*, "what it means to 'interpret,' rather than merely 'consult,' a CBA, and remanding for determination of whether any CBA is implicated by the claims asserted).

As the court in the Western District of New York explained,

> [c]ourts first consider whether the right at issue derives from state law or solely from a provision of the CBA. If it is the latter, the claim is preempted. Whether the right derives from state law, the court must go on to consider whether the state law claim requires interpretation of a provision of the CBA. If contract interpretation is required, the claim is preempted.

---

[17] "TR" refers to the transcript of the Oral Argument held on July 26, 2011.

14

*Gordon*, 2009 WL 4042929, at *3 (citing *Levy v. Verizon Info. Servs. Inc.*, 498 F. Supp. 2d 256, 259 (E.D.N.Y. 2007)).

In the instant case, as a threshold matter, defendants did not provide the relevant CBA provision covering an employee for the entire period at issue; rather, they attached two CBAs which do not cover the entire statute of limitations period.

In any event, even if CBAs for the entire period were submitted, it is too early to determine whether the CBAs need to be consulted or interpreted. The Court recognizes that, in certain cases, the preemption issue can be decided based upon the pleadings. *See, e.g.*, *Levy*, 498 F. Supp. 2d at 596; *Ellis v. HarperCollins Pubs., Inc.*, No. 99-CV-12123 (DLC), 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000). This case, however, is not one of them. In particular, the Court cannot conclude at this juncture that interpretation of the CBAs will be required to resolve plaintiffs' claims. For example, defendants cite several examples of factual issues that they assert will require interpretation of a CBA, such as provisions in the CBA regarding compensation for meal breaks with supervisory approval. (*See* Defs.' Memo at 21-22.) Plaintiffs, however, counter that they intend to prove their claims based upon statutory and common law obligations, rather than any violation of the CBA, and that defendants cannot avoid paying overtime required by statute simply because the employee was unable to obtain "supervisory approval" under the provisions of the CBA. Thus, it is unclear at this juncture whether interpretation of these types of provisions will be required. *See, e.g.*, *Hawkins v. Securitas Security Services USA, Inc.*, No. 09 C 3633, 2011 WL 5122679, at *6 (N.D. Ill. Oct. 28, 2011) ("It follows that the court's resolution of the IMWL claim will not require interpretation of the 'authorized by management' clause, which in turn means that the presence of the clause in the CBAs does not result in preemption.").

Similarly, defendants contend that the Court must interpret the CBA in order to decide whether defendants had knowledge that plaintiffs were working without compensation that is required by the FLSA, because the CBAs "require employees to make the employer 'aware' of missed meal breaks." (Defs.' Memo at 21.) However, plaintiffs intend to prove, *inter alia*, that defendants had actual knowledge that plaintiffs were working through their meal breaks without compensation, and thus any interpretation of this CBA provision may become irrelevant. Finally, several of the CBA provisions cited by defendants would only be referenced to determine damage, and would not provide a basis for preemption. *See Vera v. Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003) (a claim is not preempted where its "application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining damages to which a worker prevailing in a state-lawsuit is entitled'" (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988))).

In short, construing the allegations in the Third Amended Complaint most favorably to plaintiffs, they may be able to demonstrate that no interpretation of the CBAs is required in connection with their claims. Thus, this preemption issue – namely, whether the claims require interpretation, rather than merely consultation with, the CBAs – cannot be resolved at the motion to dismiss stage. *See, e.g.*, *Hintergerger v. Catholic Health System*, No. 08-CV-948S, 2012 WL 125152, at *4 (W.D.N.Y. Jan. 17, 2012)

15

("Because it is not yet evident which Plaintiffs are members of a bargaining unit or which CBAs are relevant, this Court has no basis upon which to evaluate the need to refer to or interpret any wage-related provision(s). It may well be that, with more information, Defendants can demonstrate preemption. At this juncture, however, their showing is insufficient to establish subject matter jurisdiction based on the LMRA."); *Hinterberger v. Catholic Health*, No. 08-CV-380S, 2009 WL 4042718, at *5 (W.D.N.Y. Nov. 19, 2009) ("It may well be that Plaintiffs' NYLL claim is preempted, in whole or in part. However, in the Court's considered view, the time to make that determination is after the parties and the Court are clear on which bargaining units are implicated in this action and which CBA or CBAs apply."); *Andrako v. United States Steel Corp.*, No. 07-1629, 2008 WL 2020176, at *5 (W.D. Pa. May 8, 2008) ("Because, viewing the Complaint in the light most favorable to Plaintiff, the FLSA claim is not dependent on the interpretation of a disputed provision of the CBA, it would be improper for me to dismiss the FLSA claim on that basis at this stage of the proceedings.").

Accordingly, the Court denies defendants' motion to dismiss on preemption grounds without prejudice to renewal at the summary judgment stage.

### IV.  LEAVE TO RE-PLEAD

In a conclusory fashion in their opposition papers, plaintiffs request leave to re-plead if the Court finds that the RICO and common law claims are subject to dismissal. However, in its discretion, the Court concludes that leave to re-plead is unwarranted. Specifically, plaintiff has already amended the complaint several times and, in the most recent amended pleading, failed to correct the deficiencies previously identified by the Court's Memorandum and Order. Moreover, in requesting leave to re-plead in a conclusory manner, plaintiffs have failed to articulate how another amended pleading could cure the defects that continue to exist in their pleadings as it relates to these claims. Under these circumstances, further leave to re-plead is unwarranted as futile. Thus, as noted *supra*, the RICO claims and common law state claims are dismissed with prejudice. *See, e.g.*, *Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) (holding plaintiff was not entitled to "still a third go-around" where district judge, in dismissing the initial complaint, had put plaintiff's counsel on notice of the defects); *see also Tyler v. Liz Claiborne, Inc.*, No. 09 Civ. 04147 (RJH), 2011 WL 44998983, at *17 (S.D.N.Y. Sept. 29, 2011) ("[A]s plaintiff has already amended his complaint twice, dismissal with prejudice is appropriate at this stage in the litigation."); *Harris v. Westchester Cnty. Medical Center*, No. 08 Civ. 1128, 2011 WL 2637429, at *4 (S.D.N.Y. July 6, 2011) (dismissing third amended complaint with prejudice); *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) ("[T]he Court finds that leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless.").

V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Specifically, plaintiffs' RICO and ERISA causes of action are dismissed with prejudice. Plaintiffs' state law claims are also dismissed with prejudice. Defendants' motion to dismiss on the grounds of LMRA preemption is denied at this juncture without prejudice.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date:  March 7, 2012
       Central Islip, NY

\* \* \*

Plaintiffs are represented by J. Nelson Thomas, Esq. and Michael J. Lingle, Esq. of Thomas & Solomon LLP, 693 East Avenue, Rochester, New York 14607. Defendants are represented by Anthony J. D'Auria, Esq. of Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166.